Filed 12/3/25  Wasilchen v. Chapman CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| TARRA WASILCHEN, | C101706 |
| Plaintiff and Appellant, | (Super. Ct. No. FL-2024-0349) |
| v. | |
| DAVID CHAPMAN, | |
| Defendant and Respondent. | |

Plaintiff Tarra Wasilchen appeals an order dismissing her petition for child custody on jurisdictional grounds because a North Carolina court had already asserted jurisdiction and issued an order awarding custody to her estranged husband, defendant David Chapman (we refer to the parties by their first names and mean no disrespect).  Tarra argues California has exclusive jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA; Fam. Code, § 3400 et seq.)[1] to make child custody

---

[1]     Undesignated statutory references are to the Family Code.

1

determinations, and the court erred in failing to give her an evidentiary hearing on the jurisdictional facts. We disagree with both arguments and thus affirm.

## BACKGROUND

Although this appeal is from an order dismissing Tarra's petition for child custody, there are two other custody proceedings that are relevant, and we discuss them first.

1. *The Domestic Violence Restraining Order Proceeding (Super. Ct. Yolo County, 2023, No. FL 2023-1311) and Appeal (No. C100739)*[2]

In October 2023, Tarra filed a request in Yolo County Superior Court for a domestic violence restraining order (DVRO) against David. She also sought custody of their child, who was 20 months old at the time. In support of the request, she stated David had recently been arrested in North Carolina for domestic violence against her, he had since been released from jail, and she and her daughter had left North Carolina and come to California because she feared for their safety. She identified one incident of domestic violence that occurred in California while visiting her parents.

On October 24, the court issued a temporary restraining order (TRO) on an ex parte basis and scheduled a hearing for November 14, at which time the TRO would expire. The TRO included an order that David stay away from both Tarra and their child, and an order awarding Tarra custody of the child.

The hearing was ultimately continued several times, first because Tarra was unable to serve David until December 27, and then because, once David was served, he responded by filing a motion to quash on the ground California lacked personal

---

[2] Some of the background facts are taken from our unpublished opinion in a prior appeal (*Wasilchen v. Chapman* (Sept. 24, 2025, C100739) (*Wasilchen*), which is separate from this appeal. On our own motion, we take judicial notice of our prior opinion. (Evid. Code, §§ 452, subd. (d), 459.)

jurisdiction over him. In support of the motion, David stated he lived in North Carolina and his only contacts with California were for vacations and to visit Tarra's parents.

On March 8, 2024, following a two-day evidentiary hearing, the court granted the motion to quash and dismissed both the TRO and the DVRO proceeding. Tarra appealed the dismissal, and we recently affirmed the trial court's decision. (*Wasilchen, supra*, C100739).

2. *The North Carolina Custody Proceeding*

On November 14, 2023, shortly after Tarra filed a request for a DVRO in Yolo County, David filed a complaint in North Carolina seeking custody of the child. He alleged North Carolina was the child's home state because she had lived there since she was approximately two weeks old, and he did not have information "of another custody proceeding concerning the . . . child pending in this or any other state" (we note David had not yet been served with the DVRO papers at this time, although we also note Tarra asserts he was attempting to evade service). David also requested an emergency ex parte child custody order or, in the alternative, a temporary custody order.

The North Carolina court denied the ex parte request on the ground that "no emergency exists." It also scheduled a hearing on the custody request and directed David to notify Tarra of the date and serve her with the action. Tarra filed a notice of appearance prior to the hearing.

Following the hearing, the North Carolina court entered an order granting David "sole and exclusive custody" of the child pending further hearing scheduled for January 4, 2025. The North Carolina court found it "has jurisdiction over the parties, the minor child of the parties, and the subject matter herein . . . and has jurisdiction to grant emergency relief pursuant to [North Carolina General Statutes] § 50A-201 through 50A-204," which is part of North Carolina's version of the UCCJEA. It also found Tarra removed the child from North Carolina "without the consent of or notice to [David], for the purpose of evading the jurisdiction of North Carolina courts," and there was no way

to ensure the child's safety "unless this Court grants Father's Motion for Emergency Child Custody."

On January 4, the North Carolina court issued an order continuing the hearing to January 11, as follows: "Emergency Custody hearing continued . . . because North Carolina Court needs to confer with California Court."

Early on January 11, Tarra filed a motion to dismiss David's complaint on the ground North Carolina lacked subject matter jurisdiction over custody matters because it was not the child's home state because she had never resided there for more than three weeks. Later that same day, the North Carolina court issued an order "temporarily staying child custody proceedings" following a "jurisdictional conference" with the Yolo County Superior Court.[3]

As noted above, on March 8, the Yolo County Superior Court granted David's motion to quash and dismissed both the TRO and the DVRO proceeding. Three days later, David filed a motion to lift the stay of the North Carolina proceedings and for an order awarding him custody of the child. David stated that, in light of the order dismissing the California case, "North Carolina is now the only state with jurisdiction over the parties, the minor child of the parties, and the subject matter of this action."

The North Carolina court scheduled a hearing for March 26, and ordered both parties to appear in person and Tarra to "bring the child with her to court."

The hearing was held as scheduled. Tarra and David were both present and represented by counsel, and both testified. The record contains what appears to be an unofficial transcript of the hearing, seemingly transcribed from a recording. This document is not authenticated and the top and bottom of many pages are cut off. We thus place little, if any, reliance on it other to note it shows counsel for both parties vigorously

---

[3]    A reporter's transcript of the January 11 jurisdictional conference is not part of the record on appeal.

argued the jurisdictional issues and Tarra and David both testified about what might be termed jurisdictional facts (i.e, who lived where and when and what they were doing at the time).

Following the hearing, the North Carolina court issued an order on March 27 lifting the stay and awarding David temporary custody of the child, with visitation for Tarra.[4] The court made the following findings regarding the jurisdictional issues: (1) neither Tarra nor the child were living in South Carolina when David filed the complaint and no party currently lived in South Carolina; (2) although David lived in North Carolina, there was "no dispute" the child had not lived in North Carolina for at least six consecutive months prior to the filing of the complaint; and (3) there was "no dispute" the child had not lived in California for six months. The court also found it had jurisdiction over the matter pursuant to North Carolina's version of the UCCJEA.

3. *The Present California Custody Proceeding and Appeal*

In the meantime, on March 21, 2024, approximately two weeks after the court dismissed her DVRO proceeding and over four months after David commenced his custody proceeding in North Carolina, Tarra filed the present petition seeking custody of the child.

David responded to the petition by filing a motion to quash, arguing the North Carolina court had already determined it had "jurisdiction over the parties and the subject matter of this action." A hearing on the motion was scheduled for May 16.

Prior to the hearing, Tarra filed a memorandum of points and authorities "in support of UCCJEA Jurisdiction." She argued, variously, that: (1) California was the

_____

[4] We have no other information about the status of the North Carolina case beyond what the March 27 order states. In her opening brief, Tarra states the North Carolina court "has not to date (April 10, 2025), held an evidentiary hearing, and the case remains in a temporary custody status."

5

child's home state; (2) there was no home state; and (3) California was a more appropriate forum than North Carolina because Tarra and the child " 'have a significant connection with this state' " and " 'substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.' "  She also filed a response to David's motion to quash and asked that "this action not be dismissed unless the court is declining to exercise jurisdiction to determine custody under the UCCJEA."

On May 6, the court held a conference with the North Carolina court and the parties' attorneys.  At the start of the conference, the court stated its purpose was to figure out which court had jurisdiction to make custody determinations.

Tarra's attorney argued California had continuing jurisdiction to make custody determinations because it entered the first custody order "back in . . . October 24th, 2023, in the context of Mother's domestic violence restraining order action," which "was filed before North Carolina made any custody orders," and although the DVRO action had been dismissed, an appeal had been filed, and the filing of an appeal "has the effect of staying the dismissal.  Therefore, there still . . . is a pending case in the domestic violence action."  David's attorney disagreed, and argued the UCCJEA "is very clear that at this time Judge Levine [the judge in North Carolina] and North Carolina have exclusive continuing jurisdiction over this matter."  Tarra's attorney then argued "further hearing" on the jurisdictional issue was required because "there are some heavily disputed facts here regarding where the child resided and when," and the court "may want to take some brief testimony . . . on residence issues, as that may ultimately determine the outcome here."  David's attorney responded, "Judge Levine has made findings and a ruling based on this factual argument that [Tarra's attorney] alludes to," and Tarra should not get "another bite at the apple."  "So I don't know that California has the ability to hold a factual hearing on something that's already been ruled on . . . in North Carolina."

6

After the parties' arguments, the court asked Judge Levine if she wanted to weigh in, and Judge Levine responded, "We are prepared to proceed. The child is currently in North Carolina and . . . the temporary custody arrangement has been ordered and is continuing here." The court then stated, "I don't want to undermine anything you're doing over there in North Carolina." "[T]he matter has already been litigated there. And for California to kind of step in and all of a sudden . . . assert its jurisdiction and maybe make some contrary rulings, now you've got . . . two courts making decisions on the custody." "And so the Court here is going to exercise its discretion in allowing North Carolina to maintain subject matter jurisdiction in this matter."

On May 21, the court issued a written order dismissing the action. Tarra filed a timely motion for reconsideration, which was denied, and she then filed a timely notice of appeal from the May 21 order of dismissal.[5]

## DISCUSSION

We note at the outset that although Tarra is representing herself, she is subject to the same rules as a represented party. (*Flores v. Department of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199, 205.) These rules include the following: "It is the responsibility of the appellant, here plaintiffs, to support claims of error with meaningful argument and citation to authority. [Citations.] When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration. [Citations.] In addition, citing cases without any discussion of their application to the present case results in forfeiture." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.) Moreover, we only consider arguments that appear under a separate heading summarizing the point (Cal Rules of Court, rule 8.204(a)(1)(B)), and we do not address arguments "interwoven in a statement of facts

---

[5]     Tarra does not mention the motion for reconsideration in the argument section of her opening brief, and we thus do not discuss it further.

7

unless they are discussed under an appropriate heading" (*Schaeffer Land Trust v. San Jose City Council* (1989) 215 Cal.App.3d 612, 619, fn. 2).

With these rules in mind, we first describe the relevant law and then address Tarra's cognizable arguments.

### 1. *Relevant Law and Standard of Review*

"It is well settled in California that the UCCJEA is 'the exclusive method of determining the proper forum in custody disputes involving other jurisdictions.' [Citations.] Accordingly, when a California court is asked to make either an initial or a modified custody determination, UCCJEA jurisdictional requirements must be satisfied." (*Segal v. Fishbein* (2023) 89 Cal.App.5th 692, 702 (*Segal*).) "One of the 'primary purposes' of the UCCJEA is ' ". . . to avoid competing jurisdiction and conflicting decisions." ' [Citation.] To that end, '[t]he UCCJEA ensures that only one state has jurisdiction to make "child custody determinations" ' at any one time." (*Ibid*.) Under the UCCJEA, " ' "jurisdiction either exists or does not exist at the time the action is commenced," ' " and an "action is commenced when the first pleading is filed." (*In re Marriage of Sareen* (2007) 153 Cal.App.4th 371, 376.) The UCCJEA also "takes a strict 'first in time' approach to jurisdiction," and, subject to certain exceptions, "once the court of an appropriate state [citation] has made a 'child custody determination,' that court obtains 'exclusive, continuing jurisdiction . . . .' " (*In re Marriage of Paillier* (2006) 144 Cal.App.4th 461, 469.)

Section 3421 outlines "the *exclusive* jurisdictional basis for making a child custody determination by a court of this state." (§ 3421, subd. (b), italics added.) It provides, "Except as otherwise provided in Section 3424 [dealing with temporary emergency jurisdiction, which we will discuss below], a court of this state has jurisdiction to make an initial child custody determination only if any of the following are true." (§ 3421, subd. (a).)

The first basis of jurisdiction is home state jurisdiction, which is "prioritized over

8

other jurisdictional bases." (National Conference of Commissioners on Uniform State Laws, UCCJEA (1997) com. to § 201, p. 24 [hereafter UCCJEA Official Comments].)[6] " 'Home state' means the state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding." (§ 3402, subd. (g).) California has home state jurisdiction if it "is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent . . . continues to live in this state." (§ 3421, subd. (a)(1).)

Even if California does not have home state jurisdiction, it has jurisdiction if "[a] court of another state does not have jurisdiction under paragraph (1) [i.e., home state jurisdiction], or a court of the home state of the child has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum under Section 3427 or 3428,[7] and both of the following are true: [¶] (A) The child and the child's parents, or the child and at least one parent . . . , have a significant connection with this state other than mere physical presence. [¶] (B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships." (§ 3421, subd. (a)(2).) This jurisdictional basis is sometimes referred to as significant connection jurisdiction, and "a significant connection State may assume jurisdiction only when there is no home State or when the home State decides that the significant connection State

---

[6]     " 'The official commentary from the drafters of the UCCJEA is entitled to substantial weight.' " (*A.M. v. Superior Court* (2021) 63 Cal.App.5th 343, 355, fn. 9.)

[7]     Section 3427 authorizes a court to decline to exercise its jurisdiction if it determines it is an inconvenient forum and another state is a more appropriate forum, taking numerous factors into consideration; and section 3428 authorizes a court to decline to exercise its jurisdiction if the person seeking to invoke its jurisdiction has engaged in unjustifiable conduct.

would be a more appropriate forum." (UCCJEA Official Comments, *supra*, com. to § 201, p. 25.)

Once a court exercises jurisdiction consistent with section 3421, section 3422 provides it generally obtains "exclusive, continuing jurisdiction" over custody determinations. Section 3423 provides a court of this state "may not modify a child custody determination made by a court of another state," subject to certain exceptions not applicable here. And section 3443 provides, "A court of this state shall recognize and enforce a child custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with this part or the determination was made under factual circumstances meeting the jurisdictional standards of this part." (§ 3443, subd. (a).) Thus, once a court with jurisdiction to do so makes a child custody determination, "the court of another state, including California, '[c]annot modify the child custody determination [citations]' and '[m]ust enforce the child custody determination [citations].' " (*In re Marriage of Fernandez-Abin & Sanchez* (2011) 191 Cal.App.4th 1015, 1040.)

As noted above, section 3421 provides "the exclusive jurisdictional basis for making a child custody determination by a court of this state," "[e]xcept as otherwise provided by Section 3424." (§ 3421, subds. (b), (a).) Section 3424, in turn, confers "temporary emergency jurisdiction" to issue child custody orders "if the child is present in this state and . . . it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to, or threatened with, mistreatment or abuse." (§ 3424, subd. (a).) Pursuant to section 3424, a California court has temporary emergency jurisdiction to make a child custody determination when ruling on a request for a DVRO. (See *In re Marriage of Fernandez-Abin & Sanchez, supra*, 191 Cal.App.4th at p. 1038.) " 'Issues of custody . . . often arise within the context of [domestic violence] protective order proceedings since the protective order is often invoked to keep one parent away from the other parent and the children when there is a threat of violence.

10

[The UCCJEA] recognizes that a protective order proceeding will often be the procedural vehicle for invoking jurisdiction by authorizing a court to assume temporary emergency jurisdiction when the child's parent . . . has been subjected to or threatened with mistreatment or abuse.' " (*Ibid*., italics omitted.)

Finally, section 3426 deals with simultaneous custody proceedings in different states, which is the situation here. We will discuss section 3426 in more detail below.

Because resolution of this appeal requires us to apply a statute (the UCCJEA) to underlying facts that are not in dispute, our review is de novo. (See *In re A.C.* (2017) 13 Cal.App.5th 661, 669 ["we review de novo, or independently, a . . . court's determination of jurisdictional facts based on undisputed evidence and its interpretation of statutes"]; *Shapiro v. Board of Directors* (2005) 134 Cal.App.4th 170, 178 ["We apply a de novo standard of review where, as here, our task consists of applying a statute to underlying facts that are not in dispute"].)

*2. Analysis*

As noted above, one of the primary purposes of the UCCJEA is to " 'ensure[] that only one state has jurisdiction to make "child custody determinations" ' at any one time." (*Segal, supra*, 89 Cal.App.5th at p. 702.) The question here is whether that state is California or North Carolina. The trial court effectively found that North Carolina was that state, and Tarra fails to convince us it erred in so finding.

As also noted above, section 3426 deals specifically with simultaneous proceedings in different states, which is the situation here. Section 3426, subdivision (a) provides, "a court of this state may not exercise its jurisdiction under this chapter if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this part, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum." This provision appears dispositive. At the time this custody proceeding was commenced (in

11

March 2024), another custody proceeding had already been commenced in North Carolina (in November 2023), and the North Carolina court has determined it has jurisdiction in conformity with North Carolina's version of the UCCJEA and it has not terminated or stayed its proceeding on the ground California is a more convenient forum. In this situation, section 3426 provides "a court of this state *may not exercise its jurisdiction*" under the UCCJEA. (§ 3426, subd. (a), italics added.)

Tarra argues there is an "exception" to this rule "if the other state stays or terminates its proceeding due to finding California the more appropriate forum, as Judge Levine did on January 11, 2024." Presumably she contends the California court could exercise jurisdiction because "the proceeding [in North Carolina] has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum." (§ 3426, subd. (a).) If that is her argument, we disagree. Following a jurisdictional conference with the California court, the North Carolina court "temporarily stayed" its child custody proceeding and it made no determination about California being a more convenient forum. It is clear to us that the North Carolina court stayed its proceedings only until the DVRO proceeding ended, and not because it determined California was a more convenient forum.

Our conclusion that it is the North Carolina court that has jurisdiction to make child custody determinations is buttressed by subdivision (b) of section 3426, which provides, "If the court determines that a child custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with this part, the court of this state shall stay its proceeding and communicate with the court of the other state. If the court of the state having jurisdiction substantially in accordance with this part does not determine that the court of this state is a more appropriate forum, the court of this state shall dismiss the proceeding." (Italics added.) This provision also appears dispositive. After learning about the North Carolina proceeding, the trial court communicated with the North Carolina court, and the North Carolina court stated it was

"prepared to proceed. The child is currently in North Carolina and . . . the temporary custody arrangement has been ordered and is continuing here." The North Carolina court did *not* state it had determined California was a more appropriate forum. In this situation, section 3426, subdivision (b) provides "the court of this state *shall dismiss the proceeding*," which is precisely what the court below did. (Italics added.)

It thus appears from the record before us that the trial court did the only thing the UCCJEA permitted it to do: declined jurisdiction and dismissed the proceeding.

Tarra nonetheless argues the court erred in dismissing the proceeding because California is the child's home state within the meaning of the UCCJEA, and it is thus California that has exclusive jurisdiction to make child custody orders, not North Carolina. We disagree.

Tarra acknowledges a child's home state is determined as of the date a proceeding is commenced (although she then proceeds to focus on other dates). It is clear California was not the child's home state when the DVRO request was filed on October 23, 2023, because it is clear from the face of that request that the child had not lived in California for at least six consecutive months (according to the request, the child had lived in California from August 27 to September 24, and had otherwise lived in North Carolina or South Carolina). California did, however, have temporary emergency jurisdiction to issue a child custody determination.

For the same reason, it is also clear California was not the child's home state when David filed his custody complaint in North Carolina in November 2023 (because, at most, the child and Tarra had lived in California for less than three months by then).

Tarra argues California had home state jurisdiction by the time the North Carolina order issued its custody order on March 27, 2024. We conclude she focuses on the wrong date because home state jurisdiction is determined based on the date a proceeding is commenced (see §§ 3402, subd. (g), 3421, subd. (a)(1)), not on the date a custody order is issued.

13

As for Tarra's argument that California was the child's home state when she commenced the present custody proceeding in March 2024, she is mistaken. Case law teaches that, for purposes of determining the home state, "time spent in a forum *after* the filing of a child custody petition may not be counted towards the time necessary for home state jurisdiction." (*In re Marriage of Sareen, supra*, 153 Cal.App.4th at p. 379, italics added.) "[A] parent may not take a child to a jurisdiction, file a premature custody petition, and then use the time the child remains in that jurisdiction pending resolution of the petition to meet the six-month UCCJEA home state period." (*Id*. at p. 380.) The same logic would apply to the filing of the DVRO request. This means that time spent in California after the filing of the DVRO petition and before its dismissal may not be used to meet the six-month home state period, which also means California was not the child's home state when the current custody proceeding was commenced.

In any event, by the time Tarra commenced the current custody proceeding, David had already commenced his own custody proceeding in North Carolina, and the North Carolina court ultimately found it had jurisdiction and issued a custody order. As between Tarra's custody petition and David's custody petition, David's is first in time. As noted above, the UCCJEA "takes a strict 'first in time' approach to jurisdiction," and "once the court of an appropriate state (Fam. Code, § 3421, subd. (a)) has made a 'child custody determination,' that court obtains 'exclusive, continuing jurisdiction . . . .' (Fam. Code, § 3422, subd. (a).)" (*In re Marriage of Paillier, supra*, 144 Cal.App.4th at p. 469.) And again: " 'In general, once the court of an "appropriate state"—one having jurisdiction under section 3421, subdivision (a)—has made a child custody determination, "that court obtains 'exclusive, continuing jurisdiction.' " ' [Citation.] Thus, when a California court is asked to make a custody determination but discovers that a child custody proceeding has already been commenced in another state having jurisdiction 'substantially in accordance with' the UCCJEA, the California court must stay its proceeding and consult with the other state court. (§ 3426, subd (b).) If the out-of-state

14

court having jurisdiction 'does *not* determine that the [California court] is a more appropriate forum,' then the California court 'shall dismiss' the California custody proceeding. (§ 3426, subd. (b), italics added.)" (*Segal, supra*, 89 Cal.App.5th at p. 703, fns. omitted.) The North Carolina court found it had jurisdiction under the UCCJEA, and it made a child custody determination. North Carolina thus had exclusive, continuing jurisdiction over custody determinations, and California was required to dismiss Tarra's custody proceeding.

Tarra argues that, under subdivision (a)(2) of section 3421, the trial court was required to determine "which state has the most significant connection to the child," and she suggests that if the court had given her the evidentiary hearing she seeks, it would have determined California had the most significant connection. Tarra misstates the law. Assuming section 3421, subdivision (a)(2) applies (i.e., no home state or home state declines to exercise jurisdiction), the court must determine (among other things) that the child and the child's parent(s) "have a significant connection with this state," but it does not provide the court must determine that the child and the child's parent(s) have a more significant connection with this state than with any other state. It is possible that, in a case where there is no home state, more than one state could assert significant connection jurisdiction, in which case the court in which the first custody proceeding was commenced would have exclusive jurisdiction because of the UCCJEA's " 'first in time' approach to jurisdiction." (*In re Marriage of Paillier, supra*, 144 Cal.App.4th at p. 469.) Here, the North Carolina custody proceeding was filed before the current custody proceeding, which means it is North Carolina that has exclusive jurisdiction.

Tarra argues the DVRO proceeding in Yolo County was first in time and is sufficient to confer exclusive and continuing jurisdiction on California. We disagree. Although the court may have assumed temporary emergency jurisdiction over child custody determinations when it issued the TRO, that jurisdiction ended when it dismissed the TRO and the DVRO proceeding.

Tarra states, "California accepted . . . jurisdiction when they ordered the DVTRO with custody on October 24, 2023. Further, the jurisdiction was extended by the timely appeal." That is the extent of her "argument" on this issue. Because she cites no legal authority for the implied proposition that temporary emergency jurisdiction is somehow extended by the filing of the appeal, "we may treat the point as forfeited and pass it without consideration." (*Allen v. City of Sacramento, supra*, 234 Cal.App.4th at p. 52.) We thus treat this point as forfeited.[8]

Tarra's final argument is that the court erred by denying her an evidentiary hearing on the jurisdictional facts. But Tarra already had an evidentiary hearing on the jurisdictional facts *in North Carolina*, and at the conclusion of that hearing, the North Carolina court found it had jurisdiction. To paraphrase another case, to the extent Tarra contends the North Carolina court's jurisdiction determination was erroneous, her argument is with the North Carolina court, not the California court. (*Segal, supra*, 89 Cal.App.5th at p. 704.) We are aware of no legal authority that would give Tarra a second opportunity for an evidentiary hearing on the jurisdictional facts in California when she already had such a hearing in North Carolina.

Tarra has numerous complaints about the hearing in North Carolina and the subsequent custody order, and she accuses the North Carolina court of "reciting David's lies in [its] findings of fact." Again, to the extent Tarra has complaints about the North Carolina proceedings, her recourse is with the North Carolina court, not the California

---

[8] We note Tarra appears to be wrong on the law in any event because Code of Civil Procedure section 917.7 provides, "The perfecting of an appeal shall not stay proceedings as to those provisions of a judgment or order which award, change, or otherwise affect the custody . . . of a minor child." The order dismissing the TRO is effectively an order that changes or otherwise affects the custody of a child, which means the appeal did not stay that order. This also means that, whatever temporary emergency jurisdiction California had over child custody determinations while the DVRO proceeding was still active, ended when the case was dismissed.

16

court.  (*Segal*, *supra*, 89 Cal.App.5th at p. 704.)  And again, we are aware of no legal authority that would allow us to determine whether the North Carolina court's findings are supported by the evidence or to second-guess its jurisdictional determination.

Finally, Tarra argues she had a right to a hearing pursuant to section 217, which provides, "At a hearing on any order to show cause or notice of motion brought pursuant to this code, absent a stipulation of the parties or a finding of good cause . . . , the court shall receive any live, competent testimony that is relevant and within the scope of the hearing."  (§ 217, subd. (a).)  On its face, section 217 does not appear to be applicable to a decision by the trial court, following a jurisdictional conference with the North Carolina court, to dismiss this case as required by the UCCJEA.

## DISPOSITION

The judgment of dismissal is affirmed.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


_____/s/_____
EARL, P. J.


We concur:


_____/s/_____
KRAUSE, J.


_____/s/_____
WISEMAN, J.[*]

_____

[*]    Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.